## SECURITY MUT. CASUALTY CO. v. SMITH.

### No. 5751.

Court of Appeal of Louisiana.
Second Circuit.
Jan. 10, 1939.

A. A. Moss, of Winnfield, for appellant.
C. D. Moss, of Winnfield, for appellee.

HAMITER, Judge.

As assignee of the Swift & Company Fertilizer Works, plaintiff, Security Mutual Casualty Company, instituted this suit to recover judgment for an alleged indebtedness incurred by defendant with said assignor. The amount claimed is $780.

Defendant denies generally the allegations of the petition. He specially pleads the prescription of three years in bar of any claim against him that plaintiff might have.

There was judgment in plaintiff's favor for the sum of $497.90, with legal interest thereon from judicial demand until paid. Defendant appealed devolutively.

An answer to the appeal has been filed in which plaintiff asks an increase of the award to the amount originally demanded.

Defendant owns and operates a small mercantile establishment at Sikes, Louisiana. His wife assists him in conducting the business. While he is away from the

store, which is frequently, she is in complete charge of the operations. Since the year 1927 he has represented the Swift & Company Fertilizer Works at and near Sikes in the distribution of its fertilizer. At times he was authorized to effect sales on terms of credit, while at others only cash transactions were permitted.

On April 2, 1935, defendant executed a written consignment contract with the fertilizer company which recited that he was designated as "its agent for the sale, on commission and for its account, of such quantities and brands of fertilizers as may be mutually agreed upon from time to time" according to certain stipulated terms and conditions. The further recitation was that, "the agent shall sell only for cash and that his authority thereunder is limited to such sales only, and that all monies received from sales thereunder shall be remitted to Swift & Company Fertilizer Works when and as received". The agreement was confirmed at New Orleans on May 11, 1935. When this contract was executed, defendant had in his possession a quantity of fertilizer that had been shipped to him on consignment under previous, and somewhat similar, agreements. This was rebilled or recharged to him, after being inventoried, which in effect amounted to his acquisition of the quantity at that time.

After the expiration of the 1935 planting and growing season, another inventory was taken of the fertilizer which defendant then had on hand. This was prepared through the joint efforts of a representative of the company and defendant's wife. It carried the date of June 7, 1935, and was signed, "P. W. Smith". This name, which is that of defendant, was affixed by the wife. The instrument stated: "(I) (we) have on hand unsold Fertilizer consigned to (me) (us) as agent by Swift & Company as follows: * * * And am holding same as agent, subject to conditions of contract under which shipment was made." The portion represented by asterisks provides a description of the inventoried commodities and fixes their total value at $1410.48.

The mentioned fertilizer was retained by defendant, and on February 1, 1936, he was rebilled therefor. The amount charged him was said value of $1410.48. No further shipments were received. Between January 17, 1936, and June 4, 1936, inclusive, defendant forwarded to his principal four cash payments totaling $244.88. On or about July 18, 1936, the company received from defendant the remainder of the fertilizer that he possessed, and credited his account for its value, which was $190.61. After allowing credit for the cash payments and the returned products, the company ascertained that it was still due the sum of $974.99.

In the early part of September, 1936, a representative of the company visited Sikes for the purpose of obtaining an adjustment of the stated balance. There he conversed with defendant and was told of a previous collapse of a warehouse with resultant damage to the fertilizer. With a view of compensating this loss, he proposed a twenty per cent discount on the then balance of $974.99, or a reduction of $194.99. He states that this was agreed to by defendant.

A letter signed "P. W. Smith" and bearing date of September 10, 1936, was later received by the company. It was written by defendant's wife, and states in part:

"In regard to balance due fertilizer account amount to $974.99, your Mr. Cook and I have agreed that an allowance of twenty per cent to correct shrinkage and waste due to warehouse collapse would be fair to both of us. This leaves a balance of $780.00."

On January 20, 1937, the Swift & Company Fertilizer Works assigned and transferred unto plaintiff its claim against defendant in consideration of the payment of the sum of $780. This payment was made because of plaintiff's being the surety on the fidelity bond furnished by defendant. Under the assignment the assignee was authorized to proceed in its name "to recover by suit or otherwise, any and all right, title, interest and claim Swift & Company Fertilizer Works has in and to the above named amount."

There is much evidence in the record relating to a large loss and shrinkage of fertilizer for which defendant claims credit. We shall not discuss in detail this asserted depreciation, for it appears to have been accounted for through the twenty per cent discount allowed by the company's representative, referred to above, and agreed to and accepted by defendant, as is evidenced by the aforequoted letter.

Defendant insists, however, that said letter and the inventory dated June 7, 1935, both of which were signed in his

name by his wife, were not and are not binding on him, because they were executed during his absence from the place of business and without his authority. It is our opinion that he is bound thereby.

As before stated, the record discloses that defendant was absent from the store a great deal, and during his absence his wife had complete charge of and operated the business. She was then acting as his agent with at least implied authority to perform all things reasonably necessary and incidental in the furtherance of that enterprise. The fertilizer agency was carried on in connection with the store, and the referred to authority pertained and extended to it. It was unnecessary that she have specific authorization from her husband to bind him with respect to the inventory and the letter. The implied authority sufficed. The provisions of Civil Code, article 3000, are here pertinent. They are:

"Powers granted to persons, who exercise a profession, or fulfill certain functions, of doing business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise."

Cases in the Louisiana jurisprudence interpreting the quoted codal article, and decreeing liability of the husband for obligations created by the wife, during his absence, in connection with a community business, are Perfection Garment Co. v. Lanasa, 7 La.App. 31, and Motion Picture Advertising Service v. Modica, 18 La.App. 647, 139 So. 80.

The rebilling on February 1, 1936, was based on said inventory value of June 7, 1935. By deducting from the amount there shown the cash payments made in 1936, and also the twenty per cent shrinkage and loss allowance, the balance claimed in this suit is reached. And such balance is the amount acknowledged to be due in the discussed letter.

Defendant's plea of prescription of three years is not meritorious. The running of prescription was interrupted by the signed yearly inventories and contracts described in the record.

The district judge found that defendant owes $497.90. In deciding upon that amount he predicated the twenty per cent shrinkage allowance on the inventory value of June 7, 1935, of $1410.90. In this respect we think there was error. The testimony and the letter of September 10, 1936, reveal that the discount was to be based on the amount due at the time of the allowance, which was $974.99. By so computing the indebtedness the unpaid balance is $780. This sum is prayed for by plaintiff both in its petition and in the answer to the appeal.

Accordingly, the judgment appealed from is amended by increasing the award in plaintiff's favor to $780, and, as amended, it is affirmed. The costs of the appeal shall be paid by plaintiff.